STATE OF NORTH CAROLINA v. JAMES WILLIAM BARROW

No. 171A97

(Filed 23 July 1999)

**1. Criminal Law— capital trial—defendant's closing argu-
ments—number**

The trial court erred in a prosecution for first-degree murder
by not permitting defense counsel to make three closing argu-
ments during the guilt phase. Defendant was being tried for
multiple capital felonies, did not present evidence during the
guilt-innocence phase, made a clear request, and obtained a rul-
ing upon the request, thereby preserving the question for appel-
late review. There was prejudice per se.

**2. Trials— jury's request to review transcripts of testimony—
failure to exercise discretion**

In a capital first-degree murder prosecution decided upon
other grounds, the trial judge was required to exercise his discre-
tion as to whether to have the court reporter read to the jury the
testimony requested by the jury along with other evidence relat-
ing to the same factual issue. The court's statement that it "does-
n't have the ability to now present to you the transcription of
what was said during the course of the trial" suggests a failure to
exercise discretion.

**3. Homicide— acting in concert—instructions**

In a capital first-degree murder prosecution reversed upon
other grounds, the trial court at the new trial must charge the
jurors that they are required to find that defendant himself pos-
sessed the requisite intent before rendering a verdict of guilty on
the basis of defendant's acting in concert with respect to specific-
intent crimes where the murders were committed after *State v.
Blankenship*, 337 N.C. 543, and before *State v. Barnes*, 345 N.C.
184.

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from two judg-
ments imposing sentences of death entered by Stephens (Ronald L.),
J., on 27 November 1996 in Superior Court, Johnston County, upon
jury verdicts finding defendant guilty of first-degree murder.
Defendant's motion to bypass the Court of Appeals as to his appeal of

STATE v. BARROW

[350 N.C. 640 (1999)]

additional judgments was allowed by the Supreme Court on 27 August 1998. Heard in the Supreme Court 12 April 1999.

*Michael F. Easley, Attorney General, by John H. Watters, Special Deputy Attorney General, for the State.*

*Ann B. Petersen for defendant-appellant.*

FRYE, Justice.

On 13 February 1995, defendant was indicted upon three counts of first-degree murder and two counts of assault with a deadly weapon with intent to kill inflicting serious injury. On 20 March 1995, the grand jury returned another indictment charging defendant with assault with a deadly weapon with intent to kill. Defendant was tried capitally at the 28 October 1996 Criminal Session of Superior Court, Johnston County. On 21 November 1996, the jury returned verdicts finding defendant guilty on all counts. In a capital sentencing proceeding conducted pursuant to N.C.G.S. § 15A-2000, the jury recommended and the trial court imposed sentences of death for the murder of Antwon Jenkins and for the murder of Michael Kent Jones. Defendant was sentenced to life imprisonment without parole for the murder of Lynn Wright to be served consecutive to the death sentences. The three assault charges were consolidated into a single judgment in which defendant was sentenced to imprisonment for a minimum term of 86 months and a maximum term of 113 months, to be served consecutive to the sentence of life without parole.

A detailed recitation of the evidence presented at trial is unnecessary in order to reach our decision in this case. The State's evidence tended to show that defendant and Davy Stephens[1] entered a house in Johnston County in the early morning hours of 21 January 1995, killing at least three men and wounding several others. Several persons who were present at the house gave conflicting testimony regarding the sequence and details, but the evidence was sufficient to support the verdicts rendered by the jury on all counts.

[1] In his first argument, defendant contends that the trial court committed prejudicial error *per se* by refusing to permit defendant's attorneys to make three closing arguments. Defendant rested his case without presenting evidence during the guilt-innocence phase of the

---

1. Davy Stephens was convicted of three counts of first-degree murder and sentenced to death. This Court found no error. *See State v. Stephens*, 347 N.C. 352, 493 S.E.2d 435 (1997), *cert. denied*, —— U.S. ——, 142 L. Ed. 2d 66 (1998).

**STATE v. BARROW**

[350 N.C. 640 (1999)]

trial. Defense counsel told the judge that they wanted to make three closing arguments: an opening argument by one defense attorney *before* the State's closing arguments and two final arguments, one by each of his attorneys, *after* the State's closing arguments.

The exchange between the trial court and defense counsel proceeded as follows:

THE COURT: Any anticipation—and again, I'm not trying—and I'm not going to restrict anyone on the length of time that you will argue your case—any anticipation as to about how long those arguments will be in combination with each other?

MR. STUBBS [prosecutor]: I think the State's two arguments would last anywhere from an hour to an hour and a half.

MR. DENNING [defense counsel]: Your Honor, I don't think Defendant's arguments would last longer than an hour, hour and 10 or 15 minutes at most. What we would like to do, subject to the Court's approval, of course, would be to offer about a very brief three-, four-, five-minute opening statement, and then Mr. Murphy and I both having the right to close after the State's argument.

THE COURT: You can open and close. I'll let you know tomorrow morning about that.

MR. DENNING: Okay. That's fine.

THE COURT: I mean, the procedure gives you—this is the first phase of this trial. The procedure gives you the right, in the Court's discretion, to open and close. I'm not sure the Court's going to allow you both to open and then have two arguments in closing.

MR. DENNING: Okay. Certainly, I will state to the Court that we both would not open. But I—

THE COURT: Yes, sir; I understand.

MR. DENNING: I think you understand where I'm coming from.

THE COURT: Yes, sir.

MR. DENNING: Whatever you decide, we're certainly prepared to live with it.

The colloquy continued the next day as follows:

MR. DENNING: Judge, as to the order of argument?

THE COURT: Yes, sir. I'll allow—in my discretion, I'll allow as under the rules of the Court is allowable. You can open and close. I'll allow an argument in opening and I'll allow an argument in closing. And the State—or you could waive opening and have two arguments in closing if you desire to do that. However you elect to proceed, the State will argue either, if you waive opening, first, and however many arguments they've determined that they want to make, or if you decide to open and close on behalf of the Defendant, the State will be sandwiched with however many arguments that they intend to use in between opening and closing.

I'd like to know, if I can, whether or not you intend to open and close and what fashion, so that when we come back from the break, the State will know whether or not they're arguing or whether you're arguing.

MR. MURPHY [defense counsel]: Your Honor, I intend to open for the Defendant. Denning will close.

N.C.G.S. § 7A-97 provides for the trial court's control of counsel's arguments to the jury:

In all trials in the superior courts there shall be allowed two addresses to the jury for the State or plaintiff and two for the defendant, *except in capital felonies, when there shall be no limit as to number.* The judges of the superior court are authorized to limit the time of argument of counsel to the jury on the trial of actions, civil and criminal as follows: to not less than one hour on each side in misdemeanors and appeals from justices of the peace; to not less than two hours on each side in all other civil actions and in felonies less than capital; *in capital felonies, the time of argument of counsel may not be limited otherwise than by consent, except that the court may limit the number of those who may address the jury to three counsel on each side.* Where any greater number of addresses or any extension of time are desired, motion shall be made, and it shall be in the discretion of the judge to allow the same or not, as the interests of justice may require. In jury trials the whole case as well of law as of fact may be argued to the jury.

N.C.G.S. § 7A-97 (1995) (emphasis added).

This Court has held that when a defendant presents no evidence during the guilt-innocence phase of a capital trial, he or she is entitled

to present both the opening and final arguments to the jury during the guilt-innocence closing arguments.[2] *State v. Mitchell*, 321 N.C. 650, 365 S.E.2d 554 (1988); Gen. R. Pract. Super. and Dist. Ct. 10, 1999 Ann. R. N.C. 8. In fact, when a defendant does not present evidence and is thus entitled to both opening and final arguments to the jury, defense counsel, not exceeding three persons, may each address the jury as many times as they desire during closing arguments. *State v. Eury*, 317 N.C. 511, 516, 346 S.E.2d 447, 450 (1986). Though not at issue in this case, we note that in capital cases, the defendant always has a statutory right to present the final argument during sentencing phase closing arguments, without regard to whether he presented evidence during that phase. N.C.G.S. § 15A-2000(a)(4) (1997); *Mitchell*, 321 N.C. at 657, 365 S.E.2d at 558.

Here, defendant was being tried for multiple capital felonies and did not present evidence during the guilt-innocence phase. The State argues that in *State v. Williams*, 343 N.C. 345, 368, 471 S.E.2d 379, 392 (1996), *cert. denied*, 519 U.S. 1061, 136 L. Ed. 2d 618 (1997), the Court distinguished *Mitchell* by declining to order a new trial where the defense did not specifically request that both defense attorneys argue after the State and where the defense never objected. Here, the State argues that defense counsel's request was equivocal and that no objection was made. To the contrary, defense counsel made a clear request. He said that defendant's attorneys would like to offer a brief opening statement, "and then Mr. Murphy and I both having the right to close after the State's arguments." Any subsequent deference to the trial court was made in an effort towards professional civility. Further, pursuant to North Carolina Appellate Rule 10(b)(1), defense counsel made a timely request and obtained a ruling upon the request, thereby properly preserving this question for appellate review. *See* N.C. R. App. P. 10(b)(1). Thus, as in *Mitchell*, defendant was entitled to present both the opening and final arguments to the jury during the guilt-innocence phase closing arguments.

"The right to a closing argument is a substantial right of which a defendant may not be deprived by the exercise of a judge's discretion." *Eury*, 317 N.C. at 517, 346 S.E.2d at 450. In *Mitchell*, we held that the refusal of the trial court to permit both counsel to address the jury during defendant's final arguments constitutes prejudicial

---

2. N.C.G.S. § 84-14 is the predecessor to N.C.G.S. § 7A-97. The change in codification was made under chapter 431, section 7 of the 1995 Session Laws without any modification to the statute's language. Therefore, even though the relevant cases were decided using section 84-14, they are still fully applicable to the instant case.

STATE v. BARROW

[350 N.C. 640 (1999)]

error *per se* entitling the defendant to a new trial as to the capital felony. *Mitchell*, 321 N.C. at 659, 365 S.E.2d at 559. Further, where a capital felony has been joined for trial with noncapital charges, the trial court's failure to allow both of defendant's counsel to make final arguments was prejudicial error as to the capital and noncapital charges. *Id.* Accordingly, in *Mitchell*, we granted the defendant a new trial as to the capital and noncapital charges. *Id.*; *see State v. Campbell*, 332 N.C. 116, 119-20, 418 S.E.2d 476, 478 (1992) (entitling defendant to a new trial as to capital and noncapital charges for the failure of the trial judge to allow both defense attorneys to make final arguments).

Likewise, in the instant case, the failure of the trial court to permit defense counsel to make three arguments during closing arguments of the guilt phase constituted prejudicial error *per se*. Defendant is thus entitled to a new trial as to the capital and noncapital charges.

Since defendant is entitled to a new trial on the first issue, it is unnecessary to address defendant's remaining arguments. However, we elect to address two additional issues since they relate to matters which may arise at a new trial.

[2] In his second argument, defendant contends that the trial court committed prejudicial error by failing to affirmatively exercise its discretion under N.C.G.S. § 15A-1233, thereby entitling defendant to a new trial. In the instant case, the jury sent a note to the trial judge requesting certain State's exhibits and the transcripts of the testimony of four witnesses: Kenneth Farmer, James White, June Bates, and SBI Agent Bishop. The trial court granted the request for the exhibits and, without objection from the parties, allowed the jury to take them into the jury room. The judge further responded to the jury that the court reporter had not yet transcribed the testimony, and the court did not have the ability to present the transcript to the jury.

N.C.G.S. § 15A-1233(a) provides:

(a) If the jury after retiring for deliberation requests a review of certain testimony or other evidence, the jurors must be conducted to the courtroom. The judge *in his discretion*, after notice to the prosecutor and defendant, *may direct that requested parts of the testimony be read to the jury and may permit the jury to reexamine in open court the requested materials admitted into evidence*. In his discretion the judge may also

have the jury review other evidence relating to the same factual issue so as not to give undue prominence to the evidence requested.

N.C.G.S. § 15A-1233(a) (1997) (emphasis added).

The issue is whether the trial court exercised its discretion as required by N.C.G.S. § 15A-1233(a). The statute's requirement that the trial court exercise its discretion is a codification of the long-standing common law rule that the decision whether to grant or refuse a request by the jury for a restatement of the evidence lies within the discretion of the trial court. *See State v. Johnson*, 346 N.C. 119, 124, 484 S.E.2d 372, 375 (1997); *State v. Ford*, 297 N.C. 28, 30, 252 S.E.2d 717, 718 (1979). It is within the court's discretion to determine whether, under the facts of a particular case, the transcript should be available for reexamination and rehearing by the jury. *See State v. Lang*, 301 N.C. 508, 510, 272 S.E.2d 123, 125 (1980).

"When a motion addressed to the discretion of the trial court is denied upon the ground that the trial court has no power to grant the motion in its discretion, the ruling is reviewable." *Johnson*, 346 N.C. at 124, 484 S.E.2d at 375. " 'In addition, there is error when the trial court refuses to exercise its discretion in the erroneous belief that it has no discretion as to the question presented. Where the error is prejudicial, the defendant is entitled to have his motion reconsidered and passed upon as a discretionary matter.' " *Id.* (quoting *Lang*, 301 N.C. at 510, 272 S.E.2d at 125).

In the instant case, the following exchange occurred between the trial court and the jury:

THE COURT: Mr. Jordan, and you've sent a note out indicating certain requests by the jury, and I've had you come back in to answer those questions and requests. Your note reads, "One, may we obtain State's Exhibits two large diagrams?" You're asking to take those two diagrams into the jury deliberation room?

THE FOREPERSON (JORDAN): Yes, sir.

THE COURT: The Court's going to honor that request. The two large diagrams that were used during the course of the trial, you'll be able to take that back and use them in your deliberative process.

Number two, it says, "May we obtain transcripts of Kenneth Farmer, James White, and June Bates?" *Ladies and gentlemen of*

**STATE v. BARROW**

[350 N.C. 640 (1999)]

*the jury, although the Court Reporter obviously was taking down and continues to take down everything that's in fact been said during the trial, what she's taking down has not yet been transcribed. And the Court doesn't have the ability to now present to you the transcription of what was said during the course of the trial.*

It was important, and it remains to be important that you listen carefully to the testimony, which I'm sure that you did, of each witness who testified. It will be your responsibility and obligation to use your independent recollection of what those witnesses testified to during the course of the trial in your evaluation of the evidence in the case. So we're not in the position to be able to comply with that request as far as any transcription of anything said by a witness during the trial, which would also apply to number three, "May we obtain transcripts from Bishop, SBI, for ballistics?" Again, his testimony was taken, but not transcribed, and so you'll have to take your recollection of his testimony and how it applies to the other evidence in the case.

(Emphasis added.)

Here, the trial court's statement that it "doesn't have the ability to now present to you the transcription of what was said during the course of the trial" suggests a failure to exercise discretion. This response could be interpreted as a statement that the trial court did not believe that it had discretion to consider the jury's request. *See id.* at 124-25, 484 S.E.2d at 376 (holding that the trial court's response to the jury's request—"I'll need to instruct you that we will not be able to replay or review the testimony for you"—indicated that the trial court believed it did not have discretion to consider the request); *see also State v. Ashe,* 314 N.C. 28, 36-37, 331 S.E.2d 652, 657-58 (1985) (holding that the trial court failed to exercise its discretion in merely stating that the request could not be granted because there was "no transcript at this point").

This Court has upheld the decision of the trial court where it exercised discretion in similar cases. *See State v. Fullwood,* 343 N.C. 725, 743, 472 S.E.2d 883, 892 (1996) (concluding that the trial court plainly exercised its discretion in denying the jury request to review testimony and "did not rely solely on the fact that the transcript was not readily available"), *cert. denied,* 520 U.S. 1122, 137 L. Ed. 2d 339 (1997); *see also State v. Burgin,* 313 N.C. 404, 415, 329 S.E.2d 653, 660 (1985) (concluding that the trial court properly exercised its discre-

tion, by telling the jury that, in its discretion, it refused to order the stenographer to type the transcript). By contrast, in the instant case, the trial court stated that it did not have the *ability* to present the transcript to the jury, indicating a failure to exercise discretion.

While defendant had no right to copies of the transcript even if available, *see State v. Abraham*, 338 N.C. 315, 353, 451 S.E.2d 131, 151 (1994), it appears that the jury's interest was in reviewing the testimony of certain witnesses. This required the trial judge to exercise his discretion as to whether to have the court reporter read to the jury the testimony of these witnesses along with any "other evidence relating to the same factual issue so as not to give undue prominence to the evidence requested." N.C.G.S. § 15A-1233(a).

**[3]** In his third argument, defendant contends that the trial court erred by refusing to instruct the jury on the charges of first-degree murder, as requested by defendant, that to prove defendant's guilt under the theory of acting in concert, the State was required to prove beyond a reasonable doubt that defendant personally had malice and the specific intent to kill formed after premeditation and deliberation.

In the instant case, the three murders were committed on 21 January 1995, after this Court's decision in *State v. Blankenship*, 337 N.C. 543, 447 S.E.2d 727 (1994), and before this Court's decision in *State v. Barnes*, 345 N.C. 184, 481 S.E.2d 44, *cert. denied*, —— U.S. ——, 139 L. Ed. 2d 134 (1997), *and cert. denied*, —— U.S. ——, 140 L. Ed. 2d 473 (1998), which overruled *Blankenship*. Therefore, the acting-in-concert rule applied in *Blankenship* applies here. *State v. Rivera*, 350 N.C. 285, 292, 514 S.E.2d 720, 724 (1999).

Under *Blankenship*, "where multiple crimes are involved, when two or more persons act together in pursuit of a common plan, all are guilty only of those crimes included within the common plan committed by any one of the perpetrators." *Blankenship*, 337 N.C. at 558, 447 S.E.2d at 736. A defendant may not be criminally responsible under the acting-in-concert theory for a crime such as premeditated and deliberate murder, which requires specific intent, unless the State shows beyond a reasonable doubt that he had the requisite *mens rea. Id.*

The acting-in-concert rule applied in *Blankenship* applies to the instant case. Thus, at defendant's new trial, the court must charge the jurors that they are required to find that defendant himself possessed

**IN RE TUCKER**

[350 N.C. 649 (1999)]

the requisite intent before they can properly render a verdict of guilty on the basis of defendant's acting in concert with respect to specific-intent crimes. *See Rivera*, 350 N.C. at 292, 514 S.E.2d at 724.

For the foregoing reasons, we conclude that defendant is entitled to a new trial on all counts.

NEW TRIAL.