STATE OF NORTH CAROLINA
v.
RODNEY KEITH BOOTHE
No. COA09-264.
Court of Appeals of North Carolina.
Filed January 5, 2010.
This case not for publication
Attorney General Roy Cooper, by Assistant Attorney General Chris Z. Sinha, for the State.
Parish, Cooke & Condlin, by James R. Parish, for defendant.
ELMORE, Judge.
Rodney Keith Boothe (defendant) was convicted by a jury of the following crimes: twelve counts of sexual activity by a substitute parent (07 CRS 00053551-3, 07 CRS 00770451-3, 07 CRS 05603351-3, 07 CRS 05603451-3), eight counts of indecent liberties with a child (07 CRS 00770553, 07 CRS 00768953, 07 CRS 05603751-3, 07 CRS 05603852, 07 CRS 05604252-3), second degree sexual exploitation of a minor (07 CRS 00768952), attempted statutory sex offense of a fourteen-year-old (07 CRS 05603853), and four counts of statutory sex offense of a fourteen-year-old by a person six years or older (07 CRS 05604051-3, 07 CRS 05604251). He was sentenced to a minimum of 2,241 months and a maximum of 2,940 months in the custody of the Department of Corrections. For each of the convictions, defendant was also ordered to enroll in satellite-based monitoring program for five years following the date of his release from prison. Defendant now appeals.

Background
When Brian[1] was thirteen, his aunt introduced him to defendant, who was a pastor at a church in Wilmington that Brian attended. Brian liked defendant's wife and children and would sometimes accompany defendant when he preached at other churches. When defendant was fourteen, he visited defendant's church in Winston-Salem and stayed in defendant's home. During that visit, defendant squeezed Brian's penis for five minutes, while Brian pretended to sleep. Brian visited defendant again and, again, defendant squeezed Brian's penis while Brian pretended to sleep. Brian was living with his grandmother in Virginia at the time, but when she mentioned to defendant that she was having back surgery, he invited Brian to stay with him while she recovered. The grandmother agreed, and Brian moved into defendant's Winston-Salem home on Mayfield Drive.[2] Defendant lived with his wife and three children. Defendant enrolled Brian in the tenth grade. Brian viewed defendant as a father and a pastor and Brian served as defendant's "armorbearer" at Christ Cathedral in Winston-Salem, Rejuvenation and Power Temple in Greensboro, and the church in Wilmington. As armorbearer, Brian traveled with defendant, protected him, and carried his briefcase and bible.
While Brian was living at defendant's house and before he turned sixteen, defendant engaged in various sexual acts with Brian including masturbation and oral sex. After Brian turned sixteen, but while Brian was still living in defendant's house, defendant continued to engage in sexual acts with Brian, which would conclude when defendant ejaculated; Brian did not ejaculate. Shortly before Brian turned seventeen, Brian permitted defendant to perform anal sex on him for the first time. After that point, they engaged in mutual sex acts with one another, including anal sex, oral sex, masturbation, and analingus. They began sending text messages to one another, which included multiple photographs of their penises.
Defendant also had a sexual relationship with Dennis,[3] who lived with his legal guardian, Marie Wilson. When he was thirteen, Dennis met defendant at Christ Cathedral Church of Deliverance, where Wilson was an elder. After Wilson moved into the house at Elm Court, across the street from defendant's Mayfield Drive house, Dennis and defendant began spending more time together. While Dennis was thirteen and fourteen, defendant touched Dennis's penis, made Dennis touch defendant's penis, masturbated Dennis, made Dennis masturbate him, performed oral sex on Dennis, forced Dennis to perform oral sex on him, and performed analingus on Dennis.
When Brian was seventeen, defendant asked him to ask Dennis to perform oral sex on one another so that defendant could watch. Dennis refused, explaining that he would not have sex with anyone but defendant. After Brian turned seventeen, defendant was evicted from his house on Mayfield Drive, and defendant's family and Brian moved into a nearby house belonging to Marie Wilson[4] and located on Elm Court. They stayed there for one week. During that week, defendant and Brian broke back into the Mayfield Drive house and engaged in oral and anal sex four separate times.
While Brian was visiting an aunt in Atlanta, the aunt discovered the text messages that Brian and defendant were exchanging. She convinced Brian to disclose what had happened between defendant and him and then she informed both the FBI and the Winston-Salem Police. Brian then moved to his grandmother's house.

Arguments

I. Jury Request
Defendant first argues that the trial court erred by denying the jury's request for a transcript of Brian and Dennis's testimony. During deliberations, the jury sent the following note to the trial court: "Your Honor, may we have access to the transcription from the following witnesses: No. 1, [Brian], No. 2, [Dennis]. Thank you." The trial court first read the note outside the jury's presence and responded as follows: "And my response is, no. We simply don't have the capability to provide transcripts, that it would take weeks most likely to provide transcripts of the testimony. They are to rely on their recollection and their notes to help refresh their recollections." The trial court asked whether defendant or the State objected, and both answered in the negative. After recalling the jury into the courtroom and re-reading the jury's question, the trial court explained:
My response is no. The transcript would take, in this type of case, would take weeks to prepare, and now we have very able court reporter here, however, just because she is typing, it is not in a form you can read. It would have to be produced. Somebody has to type up the actual words in the English language, not in note-taking language, proofread it, spell check it, punctuate it. It would just take weeks. So it is not available.
You are to use your memories as to what was said in court and your notes subject to my previous instructions to you regarding your notes to help refresh your recollection.
Our General Statutes provide that:
If the jury after retiring for deliberation requests a review of certain testimony or other evidence, the jurors must be conducted to the courtroom. The judge in his discretion, after notice to the prosecutor and defendant, may direct that requested parts of the testimony be read to the jury[.]
N.C. Gen. Stat. § 15A-1233(a) (2007). "It is within the [trial] court's discretion to determine whether, under the facts of a particular case, the transcript should be available for reexamination and rehearing by the jury." State v. Barrow, 350 N.C. 640, 646, 517 S.E.2d 374, 378 (1999). "In addition, there is error when the trial court refuses to exercise its discretion in the erroneous belief that it has no discretion as to the question presented. Where the error is prejudicial, the defendant is entitled to have his motion reconsidered and passed upon as a discretionary matter." State v. Lang, 301 N.C. 508, 510, 272 S.E.2d 123, 125 (1980). Accordingly, we review the trial court's decision for a failure to exercise discretion. Barrow, 350 N.C. at 646, 517 S.E.2d at 378.
Our appellate courts have reviewed numerous cases in which a trial court denied a jury's request for a transcript of witness testimony. Generally, our courts have found error when "the trial court indicated its belief that it was not possible to permit the jury to review the evidence as it had requested" because such a belief demonstrates a failure by the court to exercise its discretion. State v. Long, ___ N.C. App. ___, ___, 674 S.E.2d 696, 706 (2009). We need not determine whether the trial court here failed to exercise its discretion because, even assuming arguendo that the trial court did abuse its discretion by denying the jury's request, defendant cannot show that he was prejudiced by the supposed error; "defendant acquiesced in the instruction and cannot now complain that he was prejudiced by the trial court's action." State v. Lawrence, 352 N.C. 1, 28, 530 S.E.2d 807, 824 (2000). Accordingly, we hold that this argument lacks merit.

II. Closed Courtroom
Defendant next argues that the trial court erred by closing the courtroom while the minor prosecuting witness, Dennis, testified. Our General Statutes provide that, "[i]n the trial of cases for rape or sex offense or attempt to commit rape or attempt to commit a sex offense, the trial judge may, during the taking of the testimony of the prosecutrix, exclude from the courtroom all persons except the officers of the court, the defendant and those engaged in the trial of the case." N.C. Gen. Stat. § 15-166 (2007). "In clearing the courtroom, the trial court must determine if the party seeking closure has advanced an overriding interest that is likely to be prejudiced, order closure no broader than necessary to protect that interest, consider reasonable alternatives to closing the procedure, and make findings adequate to support the closure." State v. Jenkins, 115 N.C. App. 520, 525, 445 S.E.2d 622, 625 (1994) (citing Waller v. Georgia, 467 U.S. 39, 48, 81 L. Ed. 2d 31, 39 (1984)). In Jenkins, the trial court made no findings before clearing the courtroom. Id. Here, the trial court explained:
Okay. There's only three people in the audience. I will  Based on the fact that the victim  alleged victim in this case is still a juvenile and out of an abundance of caution on behalf of the victim and the testimony  the very sensitive testimony that's going to be presumably elicited from the victim in this case  the alleged victim in this case, given the fact that the Court can discern no prejudice whatsoever to the defendant and there was no prejudice that was articulated by the defendant, the Court will allow the State's motion for this one witness only.
We hold that, after considering the nature of the charges and Dennis's youth, the trial court made findings adequate to support the closure of the courtroom. Accordingly, the trial court did not err by granting the State's motion to close the courtroom pursuant to N.C. Gen. Stat. § 15-166 during Dennis's testimony.

III. Insufficiency of the Evidence
Defendant argues that the trial court erred by denying his motions to dismiss a variety of charges for insufficiency of the evidence. As to all but one challenged charge, we find no error.
In ruling on a motion to dismiss the trial court is to consider the evidence in the light most favorable to the State. In so doing, the State is entitled to every reasonable intendment and every reasonable inference to be drawn from the evidence; contradictions and discrepancies do not warrant dismissal of the casethey are for the jury to resolve. The court is to consider all of the evidence actually admitted, whether competent or incompetent, which is favorable to the State.
State v. Brown, 178 N.C. App. 189, 194, 631 S.E.2d 49, 53 (2006) (quotations and citations omitted).

A. 07 CRS 0053552.
Defendant argues that the trial court erred by denying his motion to dismiss for insufficiency of the evidence five charges of sexual act with a minor (Brian) by a substitute parent. We disagree. The indictment for 07 CRS 0053552 states: "[D]efendant . . . unlawfully, willfully and feloniously did[,] having assumed the position of a parent in the home in which [Brian], a minor child under 18 years of age, was residing, engage in a sexual act with that child." The verdict sheet for the same charge asks the jury whether defendant was "[g]uilty of sexual act with a minor, [Brian], over whom he had assumed the position of a parent residing in the home (by having [Brian] perform fellatio on the defendant at . . . [Elm Court])" It is undisputed that Brian testified that no sexual behavior took place between himself and defendant at Marie Wilson's house on Elm Court.
Our statutes "do not specify what constitutes a proper verdict sheet, [and] they contain no requirement that a written verdict contain each element of the offense to which it refers." State v. Floyd, 148 N.C. App. 290, 295, 558 S.E.2d 237, 240 (2002) (quotations and citation omitted). Verdict forms need not "match the specificity expected of the indictment." Id. at 295, 558 S.E.2d at 241. This Court has "held that a verdict sheet is sufficient if the verdict can be properly understood by reference to the indictment, evidence and jury instructions." Id. at 296, 558 S.E.2d at 241 (quotations and citation omitted). Here, defendant does not argue that the indictment was improper, only that the verdict sheet listed the wrong address for Count II. The three acts listed on the verdict sheet are: (1) defendant performed fellatio on Brian, (2) defendant had Brian perform fellatio on him, and (3) defendant had Brian perform anal intercourse on defendant. The three acts listed on the indictment are: (1) defendant performed fellatio on Brian, (2) defendant had Brian perform fellatio on him, and (3) defendant had Brian perform anal intercourse on defendant. The verdict sheet clearly articulated the three different acts that were alleged in the indictment and that Brian testified to. The jury instructions also clearly distinguished the three acts from one another. Accordingly, we hold that the verdict sheet was sufficient because the verdict could be properly understood by reference to the indictment, evidence, and jury instructions.

B. 07 CRS 0053553.
Defendant also argues that the third count listed on the same verdict sheet is fatally defective for the same reason that he argues that the second count was fatally defective. Again, we disagree. Defendant rightly points out that the verdict sheet describes the third sex act  that defendant had Brian perform anal sex on him  as having occurred in the bedroom of the house on Mayfield Drive. Brian testified that, after he moved into the house on Elm Court, he and defendant engaged in sex acts only in the family room of the Mayfield Drive house, not the bedroom. Again, the mistake on the verdict sheet does not affect the outcome because it was sufficient to allow the verdict to be properly understood by reference to the indictment, evidence, and jury instructions.

C. 07 CRS 0770451-3.
Defendant next argues that the trial court erred by denying his motion to dismiss for insufficient evidence three charges of sexual act with a minor by a substitute parent. The bill of particulars describing these charges states that they occurred "on or about January 1, 2007 through February 28, 2007." The bill of particulars described the acts as "constituting three (3) counts of sexual activity by a substitute parent are the defendant performing fellatio on [Brian] twice, and [Brian] performing fellatio on the defendant." Defendant argues that the trial court should have dismissed these charges because the State offered no evidence that these particular sex acts occurred between 1 January 2007 and 28 February 2007.
"Courts are lenient in child sexual abuse cases where there are differences between the dates alleged in the indictment and those proven at trial" and "[l]eniency has been allowed in cases involving older children as well." State v. McGriff, 151 N.C. App. 631, 635, 566 S.E.2d 776, 779 (2002) (citations omitted). We employ considerable "[j]udicial tolerance of variance between the dates alleged and the dates proved in cases involving child sexual abuse. Unless a defendant demonstrates that he was deprived of the opportunity to present an adequate defense due to the temporal variance, the policy of leniency governs." Brown, 178 N.C. App. at 195, 631 S.E.2d at 53 (quotations and citations omitted) (alteration in original).
Statutory and case law both reflect the policy of this jurisdiction that an inaccurate statement of the date of the offense charged in an indictment is of negligible importance except under certain circumstances. N.C.G.S. 15-155 explicitly provides that no judgment shall be reversed or stayed because an indictment omits stating the time at which the offense was committed in any case where time is not of the essence of the offense, nor [because it states] the time imperfectly . . .. This Court has repeatedly noted that a child's uncertainty as to the time or particular day the offense charged was committed shall not be grounds for nonsuit where there is sufficient evidence that the defendant committed each essential act of the offense.
State v. Hicks, 319 N.C. 84, 91, 352 S.E.2d 424, 428 (1987) (quotations and citations omitted) (alterations in original).
Here, defendant has not argued or shown that he was prejudiced by the trial court's denial of his motion to dismiss. The State presented ample evidence of each essential element of the crime charged and the trial court properly denied defendant's motion to dismiss.

D. 07 CRS 0770551, 07 CRS 05603751-3.
Defendant next argues that the trial court erred by denying his motion to dismiss four charges of taking indecent liberties with a child. Defendant alleges that the State presented evidence of only two incidents of indecent liberties, not four, and so two charges should have been dismissed. We disagree.
Defendant argues that the only sex acts that we should consider as indecent liberties are those that occurred after Brian moved into defendant's home on Mayfield Drive and before Brian's sixteenth birthday. However, Brian testified that defendant touched Brian's penis three times before Brian moved into defendant's home. Defendant admits in his brief that he touched Brian's penis once after Brian moved into defendant's home but before Brian turned sixteen. He also admits that he forced Brian to have anal intercourse after Brian moved into defendant's home but before he turned sixteen. Thus, the State's evidence supports five incidents of indecent liberties with a minor, even though only four were charged. Accordingly, the trial court properly denied defendant's motion to dismiss the charges.

E. 07 CRS 05604051-2, 07 CRS 05604151.
Defendant next argues that the trial court erred by denying defendant's motion to dismiss three charges of statutory sex offence against a person who is fourteen years old at the time of the offense. These particular charges stemmed from defendant forcing Dennis to perform fellatio on defendant. Dennis gave inconsistent testimony as to the number of times that he performed fellatio on defendant. At one point, Dennis testified that he performed fellatio on defendant only twice. However, at another point, Dennis testified that he performed fellatio on defendant three times. Yet later, Dennis testified that "[t]here were so many times when it happened." Because we review a motion to dismiss for insufficiency of the evidence in the light most favorable to the State, we resolve discrepancies in favor of the State. Accordingly, we hold that the State presented evidence to support all three counts of statutory sex offense against a person who is fourteen years old at the time of the offense and the trial court appropriately denied defendant's motion to dismiss.

F. 07 CRS 05603853.
Defendant next argues that the trial court erred by denying his motion to dismiss a charge of attempted statutory sex offense. The State alleged that defendant attempted to engage in sexual intercourse with Dennis. The State now concedes in its brief that it offered evidence insufficient to support sending the charge to the jury. Accordingly, we vacate defendant's conviction for attempted statutory sex offense (07 CRS 05603853).

IV. Satellite-Based Monitoring
Defendant argues that the trial court violated his constitutional rights by imposing enrollment in North Carolina's satellite-based monitoring (SBM) program for five years after his release from prison, which defendant alleges constitutes an ex post facto punishment. We acknowledge that this Court determined that SBM is a civil remedy, not a punishment, in State v. Bare, ___ N.C. App. ___, 677 S.E.2d 518 (2009), but that several dissenting opinions have questioned that outcome. See, e.g., State v. Vogt, ___ N.C. App. ___, ___, ___ S.E.2d ___, ___ (2009) (Elmore, J., dissenting); State v. Wagoner, ___ N.C. App. ___, ___, ___ S.E.2d ___, ___ (2009) (Elmore, J., dissenting); see also State v. Stines, ___ N.C. App. ___, ___, ___ S.E.2d ___, ___ (2009) ("[R]equiring defendant to submit to SBM implicates a protected liberty interest."). Regardless, defendant's required enrollment in the SBM program does not implicate defendant's ex post facto protections. For each of his convictions, defendant was ordered to enroll in the SBM program for five years. These five-year terms do not run consecutively; they all begin to run "upon the defendant's release from the Division of Prisons[.]" The effective date of the SBM statute is 16 August 2006. State v. Wooten, ___ N.C. App. ___, ___, 669 S.E.2d 749, 751 (2008). Defendant was convicted of at least nine sex crimes that occurred after 16 August 2006 and upon which the trial court based SBM orders. Accordingly, we hold that the trial court did not err by ordering defendant to enroll in satellite-based monitoring.

V. Conclusion
We vacate the judgment finding defendant guilty of attempted statutory sex offense of a fourteen-year-old (07 CRS 05603853). We otherwise hold that defendant received a trial free from error.
Vacated in part, no error in part.
Judges WYNN and CALABRIA concur.
Report per Rule 30(e).
NOTES
[1] This is not the minor victim's real name.
[2] Addresses have been modified to protect the minor victims' identities.
[3] This is not the minor victim's real name.
[4] This is not the witness's real name.