STATE OF NORTH CAROLINA
v.
PHILLIP ANTONIO GAINEY.
No. COA09-686.
Court of Appeals of North Carolina.
Filed: January 19, 2010.
This case not for publication
Attorney General Roy Cooper, by Assistant Attorney General C. Norman Young, Jr., for the State.
Russell J. Hollers III for Defendant-Appellant.
STEPHENS, Judge.
On 4 December 2006, a Mecklenburg County grand jury returned a short-form bill of indictment alleging that Defendant had committed first-degree murder. On 2 January 2007, a Mecklenburg County grand jury indicted Defendant on the charge of possession of a firearm by a felon. Defendant's case came on for trial during the 12 November 2008 criminal session of Mecklenburg County Superior Court before Judge Yvonne Mims Evans. On 21 November 2008, a jury found Defendant guilty of first-degree murder and possession of a firearm by a felon. Defendant was sentenced to life imprisonment without parole. From the judgments entered upon the jury's verdict, Defendant appeals.

I. Factual Background
The evidence presented by the State at trial tended to show the following: On 14 November 2006, Lakia Gantt ("Gantt") and her aunt, Renorda Pough ("Pough"), were together at Pough's apartment, located near the corner of 18th Street and Seigle Avenue, in Charlotte, North Carolina. On that day, Gantt wanted Pough to come home with her because she "knew that something was going on in the neighborhood[.]" Specifically, Gantt was aware that Pough and Defendant were involved in a dispute over $40.00 that Pough owed Defendant for drugs she had purchased from Defendant. About a week prior to 14 November 2006, Gantt met with Defendant in a parking lot at his residence where Gantt attempted to pay Defendant for her aunt's debt. However, Defendant would not accept payment from Gantt, and told her that he wanted Pough to repay the debt.
On 14 November 2006 at approximately 11:00 p.m., Gantt and Pough were standing on the corner of 18th Street and Seigle Avenue, near Defendant's residence, drinking beer. Gantt saw Defendant driving his blue Delta 88 automobile with his girlfriend in the car with him. Defendant stopped his vehicle at the corner where Gantt and Pough were standing and looked at Pough, and his tires made "a loud squeaking noise" as he stopped. Defendant then parked his vehicle at his residence and stayed inside for approximately ten minutes.
Gantt and Pough remained standing on the corner, when Gantt saw Defendant approach on foot. Gantt saw Defendant "fumbling with [a] gun" and "put two bullets in the gun." Gantt told her aunt that they should leave, but Defendant was already approaching and had fired one shot. Defendant then turned a corner and shot the gun in the direction of Pough's baby's father's apartment. Defendant approached Pough on the sidewalk, and when he was approximately 15 to 20 feet away, he said: "`I told you about my money. You think this is a game? This is my job. . . . You think I'm playing with you? You think I'm playing with you? I want my money[.]'" Defendant first pointed the gun at Pough's leg and then raised the gun to her head. Pough called out to Gantt, calling her by her nickname, "`Pooh, I love you[.]'" Defendant shot Pough, Pough fell to the ground, and Defendant ran away from the scene.
Gantt followed Defendant briefly but then turned back to check on Pough and call 911. Thomas Gooding ("Gooding") drove up in a red van, stopped in front of where Pough was laying, and asked if Pough was dead. Gooding is Gantt's ex-boyfriend. Gantt testified that Gooding "`was like a son'" to Pough and that he was in the "`drug business.'" Gooding exited the van and walked up to Pough to see if she was breathing. Gooding asked Gantt, "[Defendant] just did this?" Gooding next returned to his vehicle and drove away. Gantt testified that a couple of minutes after Gooding drove away, she heard something that sounded "`like a loud bomb or something[,]'" but she could not tell what caused the noise. Gantt testified that Gooding did not shoot her aunt.
Officer Timothy S. Phillips of the Charlotte Mecklenburg Police Department testified that Pough was pronounced dead at the scene. Later that night at Pough's home, the police arrived to get a statement from Gantt. Audio recordings of her statement and the 911 call she made were played during Gantt's testimony.
Terrence Brown ("Brown") testified that he lived on Seigle Avenue, near where Pough was shot. On the evening of 14 November 2006, Brown and his wife were asleep when they were awakened by a loud gunshot between 11:00 p.m. and 12:00 a.m. Brown jumped out of bed and looked out the window where he saw a girl screaming and a young man running down Seigle Avenue. Brown described the man he saw running as wearing dark clothes and boots, and having dread locks. Brown observed the man until he was out of sight, and shortly thereafter, Brown saw a minivan pull off and swerve around Seigle Avenue. Brown saw the minivan drive down 18th Street, and he thought he heard several gunshots from that direction. Brown then saw the van drive back around and pull into a neighbor's driveway where he observed two young men get out of the van looking distraught. Brown observed the two men get back into the van and drive away. After the police arrived, Brown went to the scene and told the officers that they could come to Brown's residence for a statement, and Brown later gave a statement to the police. The transcript of that statement was admitted into evidence and the audio recording of that statement played for the jury.
Defendant did not present any evidence at trial.

II. Discussion

A. Jury's Request to Review Testimony
Defendant argues that the trial court committed reversible error by failing to exercise its discretion in responding to a request from the jury to review the testimony or statements of Gantt and Brown. At trial, after deliberating for approximately an hour and a half, the jury requested that the trial court permit them to review certain evidence. Specifically, the jury asked "to review Lakia Gantt and Terrence Brown's statement or testimony[.]" The trial court responded to this request by stating, "We can obviously give them the statements, the reports, but there is no testimony for them to review so I'll just tell them that." The jury was then brought into the courtroom, and the trial court told the jury: "Ladies and gentlemen, I have received a request from you, you'd like to review a copy of Lakia Gantt and Terrence Brown's statements or testimony. The Court will be able to give you their statements but not the testimony. It's your responsibility to remember the testimony."
The standard of review on this issue
is whether the trial court exercised its discretion as required by N.C.G.S. § 15A-1233(a). The statute's requirement that the trial court exercise its discretion is a codification of the long-standing common law rule that the decision whether to grant or refuse a request by the jury for a restatement of the evidence lies within the discretion of the trial court. See State v. Johnson, 346 N.C. 119, 124, 484 S.E.2d 372, 375 (1997); State v. Ford, 297 N.C. 28, 30, 252 S.E.2d 717, 718 (1979). It is within the court's discretion to determine whether, under the facts of a particular case, the transcript should be available for reexamination and rehearing by the jury. See State v. Lang, 301 N.C. 508, 510, 272 S.E.2d 123, 125 (1980).
State v. Barrow, 350 N.C. 640, 646, 517 S.E.2d 374, 378 (1999).
Pursuant to N.C. Gen. Stat. § 15A-1233(a), a jury may be permitted to review certain testimony if the trial judge, in her discretion, deems it appropriate. N.C. Gen. Stat. § 15A-1233(a) provides that
[i]f the jury after retiring for deliberation requests a review of certain testimony or other evidence, the jurors must be conducted to the courtroom. The judge in his discretion, after notice to the prosecutor and defendant, may direct that requested parts of the testimony be read to the jury and may permit the jury to reexamine in open court the requested materials admitted into evidence. In his discretion the judge may also have the jury review other evidence relating to the same factual issue so as not to give undue prominence to the evidence requested.
N.C. Gen. Stat. § 15A-1233(a) (2007).
Defendant did not object to the trial court's decision on the jury's request. However, "`[w]hen a motion addressed to the discretion of the trial court is denied upon the ground that the trial court has no power to grant the motion in its discretion, the ruling is reviewable.'" Barrow, 350 N.C. at 646, 517 S.E.2d at 378 (quoting Johnson, 346 N.C. at 124, 484 S.E.2d at 375); see also State v. Long, __ N.C. App. __, __, 674 S.E.2d 696, 698 (2009) ("Though defendant failed to object regarding N.C. Gen.[]Stat. § 15A-1233(a) at trial, his argument is nonetheless preserved for appeal."). "In addition, there is error when the trial court refuses to exercise its discretion in the erroneous belief that it has no discretion as to the question presented. Where the error is prejudicial, the defendant is entitled to have his motion reconsidered and passed upon as a discretionary matter." Barrow, 350 N.C. at 646, 517 S.E.2d at 378 (internal quotation marks and citations omitted).
Defendant contends that the case sub judice is akin to and governed by this Court's recent holding in Long. In Long, the jury requested that the transcript of the testimony of the defendant and his victim be read back to them. Id. at __, 674 S.E.2d at 698-99. The trial court did not believe real-time transcripts were available, and thus, told the jury that North Carolina did not have the technology to provide the jurors with transcripts from the trial. Id. Our Court awarded the defendant a new trial upon finding that the trial court failed to exercise its discretion to grant the jury's request and that this error was prejudicial. Id. at __, 674 S.E.2d at 707.
In Long, our Court acknowledged the difficulty in providing a transcript quickly, but noted that "there [was] also no indication that the trial court considered the possibility of having the court reporter read the testimony to the jury, which was actually what the jury requested." Id. at __, 674 S.E.2d at 706; see N.C. Gen. Stat. § 15A-1233(a) ("If the jury after retiring for deliberation requests a review of certain testimony or other evidence, . . . . [t]he judge in his discretion, after notice to the prosecutor and defendant, may direct that requested parts of the testimony be read to the jury.. . ."). In State v. Ashe, 314 N.C. 28, 331 S.E.2d 652 (1985), our Supreme Court explained that
[t]he existence of a transcript is, of course, not a prerequisite to permitting review of testimony. The usual method of reviewing testimony before a transcript has been prepared is to let the court reporter read to the jury his or her notes under the supervision of the trial court and in the presence of all parties.
Id. at 35, n. 6, 331 S.E.2d at 657, n. 6.
In Long, our Court held that the error was prejudicial, noting that the evidence requested for review by the jury was "more in line with those cases where material evidence was requested, rather than cases where the evidence requested was not determinative of guilt or innocence." Long, __ N.C. App. at __, 674 S.E.2d at 707; see, e.g., State v. Johnson, 346 N.C. 119, 123-26, 484 S.E.2d 372, 375-77 (1997) (trial court's error was prejudicial where jury requested to review testimony from the alleged rape victim and the victim's aunt, and the victim's testimony was only evidence directly linking defendant to the alleged crimes); State v. Lang, 301 N.C. 508, 510-12, 272 S.E.2d 123, 125 (1980) (error was prejudicial where requested evidence was testimony which, if believed, would have established an alibi for defendant); State v. Thompkins, 83 N.C. App. 42, 44-46, 348 S.E.2d 605, 606-07 (1986) (trial court's error was prejudicial where requested testimony was from the only witness to identify defendant as the perpetrator); but see State v. Ford, 297 N.C. 28, 30-31, 252 S.E.2d 717, 719 (1979) (trial court's error was not prejudicial where "requested evidence was, for the most part, conflicting, inconclusive, or not in the record[,]" and "any attempt to review such evidence would likely have raised more questions than it would have answered"). In Long, the testimony of the victim and defendant was contradictory which would understandably lead the jury to want to review it. Long, __ N.C. App. at __, 674 S.E.2d at 707. The victim "testified [that] she was raped and that defendant committed other sexual offenses against her, while [the] defendant testified he had never touched her inappropriately." Id. Our Court also noted that "[d]espite the fact that [the] defendant had made a confession, at trial he recanted this confession, testified, and denied that he committed any offense against [the victim]." Id.
In State v. Johnson, 164 N.C. App. 1, 595 S.E.2d 176 (2004), however, the Court found that the trial court's failure to exercise its discretion in denying the jury's request to review testimony from an alleged accomplice was not prejudicial. Id. at 20, 595 S.E.2d at 187. In Johnson, the alleged accomplice's testimony was a primary factor linking the defendant to the crimes. Id. Nonetheless, this Court was not persuaded by the defendant's argument that "where a conviction hinges in large part on the credibility of an alleged accomplice who testifies at trial, it is prejudicial error to deny the jury an opportunity to ask to review that testimony." Id.
It is only prejudicial error to deny the jury an opportunity to ask to review certain testimony or evidence where the defendant can show that (1) such testimony or evidence involved issues of some confusion and contradiction, and (2) it is likely that a jury would want to review such testimony.
Id. (internal citation and quotation marks). In holding that there was no prejudicial error, our Court noted that the defendant did not argue that any testimony or evidence in that case involved issues of some confusion or contradiction that would make it likely that the jury would want to review it. Id.
In the present case, it is clear that the trial court did not exercise its discretion in denying the jury's request to review the testimony of Gantt and Brown. Rather, the trial court denied the jury's request because the trial court did not believe it could produce a transcript of the requested testimony. However, unlike Long, it is also clear that Defendant was not harmed by the trial court's failure to exercise its discretion.
Although the jury was unable to review Gantt's and Brown's testimony, the jury was provided with copies of the statements Gantt and Brown gave to the police, which was the exact evidence alternatively requested by the jury. Furthermore, contrary to Defendant's contention, neither Gantt's nor Brown's testimony involved issues of confusion or contradiction. See id. Defendant argues that the jury may have been confused by Gantt's testimony regarding the van driven by Gooding and Brown's testimony about the minivan he saw on Seigle Avenue. Defendant also argues that the jury may have been confused about Gantt's relationship with Gooding. We are unpersuaded by arguments which merely speculate about possible confusion in the evidence.
Gantt's and Brown's testimony was not contradictory. Nor did their testimony involve issues that the jury could find confusing. Both Gantt and Brown testified about a van driving in the area near where Pough was shot. However, the testimony relating to the van did not implicate it or its occupants in Pough's shooting and instead indicated that the van was not on Seigle Avenue until after Pough was shot. Additionally, Gantt's testimony about her relationship with Gooding was not likely to confuse the jury. Gantt's relationship with Gooding was not disputed by anyone else's testimony, and the evidence did not indicate that Pough's shooting was related to their relationship in any way. Accordingly, we are not persuaded that Gantt's and Brown's testimony was of the nature contemplated by this Court in Long, that would prejudice the Defendant if the jury was not given a chance to review it. Long, __ N.C. App. at __, 674 S.E.2d at 707. We conclude that Defendant was not prejudiced by the trial court's failure to exercise its discretion in denying the jury's request to review a transcript of Gantt's and Brown's testimony.

B. Short-Form Murder Indictment
Defendant also argues the trial court erred in denying his motions to dismiss the short-form murder indictment. At trial, Defendant moved to dismiss the charge of first-degree murder on grounds there was no evidence of premeditation or malice. On appeal, Defendant argues that his motions to dismiss should have been granted because the short-form murder indictment did not allege all of the elements of first-degree murder; specifically, he contends that it did not allege felony murder or premeditation and deliberation. Defendant also argues that the short-form indictment did not give the trial court jurisdiction of the offense, and that use of the short-form indictment violated Defendant's rights under the United States and North Carolina Constitutions.[1]
Defendant's arguments have clearly been rejected by our Supreme Court. In State v. Lawrence, 352 N.C. 1, 530 S.E.2d 807 (2000), cert. denied, 531 U.S. 1018, 148 L. Ed. 2d 498 (2000), the Supreme Court addressed these same issues.
By two separate assignments of error, defendant contends that the short-form indictment used to charge him with first-degree murder is constitutionally inadequate. We initially address whether this issue is properly before this Court. Defendant did not contest the murder indictment at trial and, in fact, filed numerous motions stating that he was charged with first-degree murder and would be tried capitally. This Court has previously stated that "a constitutional question which is not raised and passed upon in the trial court will not ordinarily be considered on appeal." State v. Hunter, 305 N.C. 106, 112, 286 S.E.2d 535, 539 (1982). A defendant waives an attack on an indictment when the validity of the indictment is not challenged in the trial court. See State v. Wallace, 351 N.C. 481, 503, [528] S.E.2d [326], [341] (2000); State v. Robinson, 327 N.C. 346, 361, 395 S.E.2d 402, 411 (1990). "However, where an indictment is alleged to be invalid on its face, thereby depriving the trial court of its jurisdiction, a challenge to that indictment may be made at any time, even if it was not contested in the trial court." Wallace, 351 N.C. at 503, [528] S.E.2d at [341]. Therefore, this issue is properly before this Court.
Defendant contends that the short-form murder indictment violated his right to due process under the Fifth and Fourteenth Amendments to the United States Constitution in two respects. First, defendant argues that the United States Supreme Court's recent ruling in Jones v. United States, 526 U.S. 227, 232, 143 L. Ed. 2d 311, 319 (1999), requires a finding that the short-form indictment was unconstitutional in that it failed to allege all of the elements of the crime charged. Specifically, defendant argues that the short-form indictment failed to allege those elements that differentiate first-degree murder from second-degree murder . . . .
The indictment against defendant for murder contained the following language:
The jurors for the State upon their oath present that on or about the date of offense shown and in the county named above [Jimmie Wayne Lawrence] unlawfully, willfully and feloniously and of malice aforethought did kill and murder Dale Jerome McLean.
This indictment complied with N.C.G.S. § 15-144, which provides for a short-form version of an indictment for murder as follows:
In indictments for murder and manslaughter, it is not necessary to allege matter not required to be proved on the trial; but in the body of the indictment, after naming the person accused, and the county of his residence, the date of the offense, the averment "with force and arms," and the county of the alleged commission of the offense, as is now usual, it is sufficient in describing murder to allege that the accused person feloniously, willfully, and of his malice aforethought, did kill and murder (naming the person killed), and concluding as is now required by law; . . . and any bill of indictment containing the averments and allegations herein named shall be good and sufficient in law as an indictment for murder or manslaughter, as the case may be.
N.C.G.S. § 15-144 (1999). This Court has consistently held that indictments based on this statute are in compliance with both the North Carolina and United States Constitutions. See, e.g., State v. Kilpatrick, 343 N.C. 466, 472, 471 S.E.2d 624, 628 (1996); State v. Avery, 315 N.C. 1, 12-14, 337 S.E.2d 786, 792-93 (1985). Further, this Court recently reconsidered the constitutionality of the short-form murder indictment in light of Jones and noted that Jones "`announce[d] [no] new principle of constitutional law, but merely interpret[ed] a particular federal statute in light of a set of constitutional concerns that have emerged through a series of our decisions over the past quarter century.'" Wallace, 351 N.C. at 508, [528] S.E.2d at [343] (quoting Jones, 526 U.S. at 251-52 n. 11, 143 L. Ed. 2d at 331 n. 11). We further emphasized our "overwhelming case law approving the use of short-form indictments and the lack of a federal mandate to change that determination" in reaffirming our previous holdings regarding the constitutionality of the short-form murder indictment. Id.

Id. at 9-11, 530 S.E.2d at 813-14.
In the present case, the short-form indictment charging Defendant with murder includes the same language as that in Lawrence: "THE JURORS FOR THE STATE UPON THEIR OATH PRESENT that on or about the 14th day of November, 2006, in Mecklenburg County, Phillip Antonio Gainey did unlawfully, willfully, and feloniously and of malice aforethought kill and murder Renorda Montressa Pough." Thus, in following Lawrence, the trial court did not err in denying Defendant's motions to dismiss the short-form murder indictment.[2] Defendant's argument is overruled.
HARMLESS ERROR in part; NO ERROR in part.
Judges STROUD and BEASLEY concur.
Report per Rule 30(e).
NOTES
[1] Defendant contends that the use of the short-form murder indictment violated the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article 1, §§ 19, 22, and 23 of the North Carolina Constitution. Other than arguing that the indictment did not allege all of the elements of first-degree murder, Defendant advances no argument as to how the short-form indictment violates these specific provisions of the United States and North Carolina Constitutions, and he acknowledges that our Supreme Court has upheld the constitutionality of the short-form murder indictment.
[2] Defendant asks this Court to "reexamine" and overrule the holding of Lawrence. This we cannot do. See State v. Gillis, 158 N.C. App. 48, 53, 580 S.E.2d 32, 36 (2003) ("This Court is bound by precedent of the North Carolina Supreme Court.").