IN THE SUPREME COURT OF NORTH CAROLINA

No. 157PA22

Filed 23 May 2024

STATE OF NORTH CAROLINA

v.

TEVIN DEMETRIUS VANN

On discretionary review pursuant to N.C.G.S. § 7A-31 from an unpublished decision of the Court of Appeals, No. COA20-907 (N.C. Ct. App. May 3, 2022) (unpublished), finding error and granting defendant a new trial after appeal from a judgment finding defendant guilty of first-degree murder, felony murder of an unborn child, and robbery with a dangerous weapon entered on 16 December 2019 by Judge Henry Stevens in Superior Court, New Hanover County. Heard in the Supreme Court on 1 November 2023.

> *Joshua H. Stein, Attorney General, by Sherri Horner Lawrence, Special Deputy Attorney General, for the State.*
>
> *James R. Glover, for defendant.*[1]

BERGER, Justice.

Prior to finding defendant guilty of first-degree murder, murder of an unborn child, and robbery with a dangerous weapon, a New Hanover County jury made multiple requests to review evidence admitted during defendant's trial. The trial

---

[1] Mr. Glover withdrew as counsel for defendant following the filing of the brief.

court allowed the jury to review some of the requested exhibits but denied the jury's attempts to obtain partial transcripts of testimony from the lead detective, the medical examiner, and defendant. The Court of Appeals granted a new trial after it concluded that the trial court failed to exercise its discretion pursuant to N.C.G.S. § 15A-1233 when it denied the jury's request to review the partial transcripts. We reverse.

## I. Factual and Procedural Background

On 12 August 2016, officers with the Wilmington Police Department responded to a call regarding an unconscious female at a local hotel. Upon arrival, the officers found Ashley Ann McLean cold to the touch and lying beside a blood-soaked pillow. The officers observed extensive swelling and bruising on the victim's face and puncture wounds on her chin and cheeks.

Dr. John Almeida Jr. performed the autopsy on Ms. McLean, and he concluded that McLean died from blunt force trauma which caused rupturing of her liver and intraperitoneal hemorrhaging. Dr. Almeida confirmed at trial that McLean's ruptured liver was "consistent with being stomped or kicked," and testified that the severity of the injuries the victim suffered were more akin to what is typically observed "in motorcycle or aircraft accidents." The autopsy showed that the victim also had bruising and swelling on the right side of her face, an abrasion on the face consistent with being stomped, three superficial incised wounds to the right side of the face, linear abrasions of the neck, bruising of the left upper shoulder, a

subarachnoid hemorrhage in the brain, and a fractured rib. McLean was eight weeks pregnant at the time of her death.

In the hotel room where McLean's body was found, officers discovered items that led them to believe that the hotel room was used to facilitate prostitution. Officers also noticed a purse lying on the floor, with its contents dumped out and strewn across the room. One officer observed that there was a phone charger and an empty phone case lying close to McLean, which suggested that her phone was missing. With the assistance of the cell service provider and the victim's boyfriend, officers located McLean's phone in a nearby ditch.

The officers accessed McLean's phone and discovered missed calls and text messages between her and a number that was later determined to belong to defendant. At 5:21 a.m. on 12 August 2016, defendant began texting McLean, and she responded with fees and the hotel address. At 9:13 a.m., defendant texted the victim, stating that he was attempting to locate her at the hotel. McLean responded that he was at the correct location and that she would let him in the hotel. An extraction report of the victim's phone generated by the Wilmington Police Department showed that at 9:30 a.m. that morning, the victim ceased all outgoing communications on her phone despite numerous incoming messages and calls.

Officers confirmed defendant's presence at the location with hotel surveillance footage showing defendant arriving at the hotel on a bicycle around 9:29 a.m. He parked his bicycle and walked towards the back entrance of the hotel. At 9:49 a.m.,

defendant was shown exiting the hotel, pulling a hood over his head, and leaving on his bicycle.

On 16 August 2016, defendant was arrested at his place of work pursuant to an outstanding warrant on an unrelated matter. Once at the police station, detectives Lee Odham and David Short informed defendant of his *Miranda* rights and then interviewed defendant regarding his association with the victim around the time of her death. Defendant initially denied being at the hotel but later admitted to the officers that he was the individual in the hotel surveillance footage. Defendant told the officers that he went to the hotel "[f]or a back massage and stuff," but he left because the woman never came down to meet him.

However, as the interview continued, defendant admitted to entering McLean's room for sexual services. In addition, defendant confessed to assaulting McLean, telling detectives that he hit her multiple times in the face and ribs. Defendant explained that he hit McLean after she demanded additional money, threatened to accuse him of sexually assaulting her, and then threatened him with a knife. Defendant repeatedly denied killing McLean stating, "all I did was knock her out." According to defendant, McLean was snoring on the bed when he left the room.

Defendant also admitted to taking the victim's phone, the money he paid her, and the knife he claimed the victim used. In addition, defendant told the officers that he burned the shirt and shoes he was wearing when he was with McLean and stated that he threw the knife down a drain near the hotel.

Defendant was subsequently indicted for first-degree murder, murder of an unborn child, and robbery with a dangerous weapon. At trial, defendant testified that he visited McLean at the hotel for sexual services and that she was alive when he left the hotel. However, defendant denied taking the victim's phone, the money he had given her, or anything else from out of the room, and he denied burning his shirt and shoes. Defendant testified that he did not hit McLean and that he only told the police he had hit the victim because he "didn't want to be charged with murder." Defendant asserted that part of the story he initially told officers was not true because "[t]hey wouldn't listen to the answers" he was giving.

During deliberations, the jury made multiple requests to review evidence. The jury first asked the court to provide a transcript of the interview of defendant by detectives Odham and Short and the phone extraction report for McLean's cell phone. The trial court discussed this request with the State and defendant, summoned the jury into the courtroom, and provided the interview transcript and extraction report to the jury. In addition, the trial court chose to provide additional reports to the jury at this time, including the victim's phone records from 10 August 2016 to 12 August 2016.

The jury subsequently asked the court for "Defendant's Exhibit No. 3," which was a map of the route defendant took entering and leaving the hotel. The trial court granted this request after consulting with the State and defendant.

The jury later sent a note to the court requesting the testimony of detective

Odham, defendant, the medical examiner, and the medical examiner's report. The

trial court discussed this request with the State and defendant:

> THE COURT: Do we – do we know what exhibit the medical[ ] examiner's report is?
>
> [THE STATE]: Judge, I pulled out the three exhibits, State's Exhibit 121, 122, and 123. It includes Dr. Almeida's report; the – Dr. Nicks, the medical – the local coroner; and the toxicology report.
>
> THE COURT: Okay. And I think that's what they're asking.
>
> Ms. Harjo, do you want to check it?
>
> [DEFENSE]: May I see? May I approach?
>
> THE COURT: Yes.
>
> THE COURT: Are you okay with that?
>
> [DEFENSE]: Yes, sir.
>
> . . . .
>
> [THE STATE]: And – are you going to bring them in and tell them that, regarding their other requests, that it's their duty to recall testimony?
>
> THE COURT: Yes.
>
> [THE STATE]: Okay. Thank you.

After this discussion, the trial court summoned the jury back to the courtroom

and addressed the request, stating:

> I have received a request from the jury that we have entered into evidence as Court's Exhibit No. 7 in which the jury is requesting Detective Odham's testimony when he was on the stand specific to Reed and Hamby; second,

> Vann's testimony when he was on the stand; third, the medical examiner – examiner's testimony and his report.
>
> The testimony of the detective, Mr. Vann, and the medical – medical examiner from the stand, it's your duty to recall their testimony. So you will have to remember that. We're not – we can't provide a transcript as to that.
>
> With regards to the medical examiner's report, we are going to provide what was admitted into evidence as State's Exhibit 121, 122, and 123, which are the reports from the medical examiner.

Defendant did not object to the trial court's denial of the jury's request for the transcripts.

That afternoon, the jury returned a unanimous verdict finding defendant guilty of first-degree murder, murder of an unborn child, and robbery with a dangerous weapon. Defendant was sentenced to life imprisonment without parole and timely appealed.

At the Court of Appeals, defendant argued that the trial court failed to exercise discretion pursuant to N.C.G.S. § 15A-1233(a) when it did not allow the jury to review the requested transcripts. According to defendant, the trial court's language that "[w]e're not – we can't provide a transcript as to that" indicated a failure to exercise discretion. Defendant asserted that because there was a "reasonable possibility that, had the error not been committed, a different result would have been reached," he was entitled to a new trial.

In an unpublished opinion, the Court of Appeals determined that the trial court's language "we can't provide a transcript" demanded "a finding . . . that the trial

court did not exercise the required discretion." *State v. Vann*, No. COA20-907, 2022 WL 1313956, *3 (N.C. Ct. App. May 3, 2023) (unpublished). The Court of Appeals opined that this purported error was prejudicial because "whether the jury believed defendant's recant of his confession [was] determinative to the jury's verdict," and defendant's recantation naturally involved "an issue of some confusion or contradiction such that a jury would want to review the evidence to fully understand it." *Id.* (cleaned up).

The State's petition for discretionary review was allowed by this Court on 3 March 2023. The State argues that the Court of Appeals erred: (1) by determining this issue was preserved for appeal prior to determining whether defendant was prejudiced; (2) by determining that the trial court failed to exercise its discretion without considering the entirety of the record; and (3) by ordering defendant a new trial without first requiring him to make a showing of prejudicial error under N.C.G.S. § 15A-1443(a).

## II. Analysis

Subsection 15A-1233(a) of the North Carolina General Statutes provides that

> [i]f the jury after retiring for deliberation requests a review of certain testimony or other evidence, the jurors must be conducted to the courtroom. The judge in his discretion, after notice to the prosecutor and defendant, may direct that requested parts of the testimony be read to the jury and may permit the jury to reexamine in open court the requested materials admitted into evidence. In his discretion the judge may also have the jury review other evidence relating to the same factual issue so as not to give undue prominence to the evidence requested.

N.C.G.S. § 15A-1233(a) (2023).

"A trial court's ruling in response to a request by the jury to review testimony or other evidence is a discretionary decision, ordinarily reviewable only for an abuse thereof." *State v. Perez*, 135 N.C. App. 543, 554 (1999) (citing *State v. Hough*, 299 N.C. 245 (1980)). However, a trial court errs when it fails "to exercise its discretion in the erroneous belief that it has no discretion as to the question presented." *State v. Starr*, 365 N.C. 314, 317 (2011) (quoting *State v. Barrow*, 350 N.C. 640, 646 (1999)). A defendant is entitled to relief only when such an error is prejudicial. *See State v. Johnson*, 346 N.C. 119, 126 (1997).

Whether a trial court failed to exercise discretion, and in turn, whether this error was prejudicial to a defendant, are questions of law reviewed de novo. *See State v. Lang*, 301 N.C. 508 (1980).

## A. Preservation

It is undisputed that defendant failed to contemporaneously object to the trial court's denial of the jury's request for the trial transcripts. Ordinarily, such a failure waives the right to appellate review. *See State v. Nobles*, 350 N.C. 483, 498 (1999) ("[T]he rule is that when [a] defendant fails to object during trial, he has waived his right to complain further on appeal."). However, "[a] statute will automatically preserve an issue for appellate review if the statute either: (1) requires a specific act by a trial judge; or (2) leaves no doubt that the legislature intended to place the responsibility on the judge presiding at the trial." *State v. Austin*, 378 N.C. 272, 276

(2021) (cleaned up). We have stated that N.C.G.S. § 15A-1233(a) contains a statutory mandate for which preservation is automatic. *See State v. Ashe*, 314 N.C. 28, 39 (1985); *State v. Lang*, 301 N.C. 508, 510 (1980).

But the State argues that in addition to the traditional statutory mandate analysis, *Ashe* conditioned appellate review on a showing of prejudice as well. *See Ashe*, 314 N.C. at 39 ("[W]hen a trial court acts contrary to a statutory mandate and a defendant is *prejudiced thereby*, the right to appeal the court's action is preserved . . . .") (emphasis added). Essentially, the State asserts that an appellate court must engage in a prejudice analysis before determining whether the issue is preserved.

However, in subsequent cases, this Court has not imposed an *ex ante* prejudice analysis. Addressing the same issue in *State v. Lawrence*, this Court held that "[w]hen a trial court acts contrary to a statutory mandate, the defendant's right to appeal is preserved despite the defendant's failure to object during trial." 352 N.C. 1, 13 (2000). More recently in *State v. Starr*, this Court explicitly held that,

> [w]hen a trial court violates this statutory mandate by denying the jury's request to review the transcript upon the ground that the trial court has no power to grant the motion in its discretion, the ruling is reviewable, and the alleged error is preserved by law even when the defendant fails to object.

*Starr*, 365 N.C. at 317 (cleaned up). Both *Lawrence* and *Starr* concerned preservation in the absence of an objection in relation to N.C.G.S. § 15A-1233(a).

While the State is correct that a fair reading of *Ashe* would require such a

showing of prejudice, it would be illogical to require an appellate court to engage in a full analysis on the merits prior to determining whether the issue is actually preserved for appeal. Therefore, despite defendant's failure to object to this issue at trial, the alleged error under N.C.G.S. § 15A-1233(a) is preserved on appeal.

**B. Exercising Discretion Under N.C.G.S. § 15A-1233(a)**

Subsection 15A-1233(a) set out above "imposes two duties upon the trial court when it receives a request from the jury to review evidence." *Ashe*, 314 N.C. at 34. First, the statute requires that the court bring all jurors into the courtroom. Second, and at issue here, "the trial court must exercise its discretion in determining whether to permit requested evidence to be read or examined by the jury." *Id.* at 34. "There is error when the trial court refuses to exercise its discretion in the erroneous belief that is has no discretion as to the question presented." *Starr*, 365 N.C. at 317 (cleaned up). Ultimately, it is the defendant's burden to show "that the trial court abused its discretion under N.C.G.S. § 15A-1233(a)." *State v. Guevara*, 349 N.C. 243, 252 (1998).

"This Court has held that a trial court does not commit reversible error by denying a jury request to review testimony . . . when it is clear from the record that the trial court was aware of its authority to exercise its discretion." *Id.* at 252. Thus, even where a trial court gives specific reasons for its determination under N.C.G.S. § 15A-1233(a), an appellate court must review this reasoning in context with the entire record. *See State v. Buckner*, 342 N.C. 198, 232 (1995) ("Nothing in the record indicates the trial judge was acting under the misapprehension of the limits of his

discretion when he made his decision."); *State v. Lee*, 335 N.C. 244, 290 (1994) ("It is clear from this record that the trial court was aware of its authority to exercise its discretion."). Review of the entire record is vital, as it would be difficult for an appellate court to properly determine whether discretion was used on the basis of one word or sentence in a transcript.[2]

When reviewing the record, our case law highlights certain circumstances which may indicate a failure on the part of a trial court to exercise discretion. For example, a statement made by a trial court that it "doesn't have the ability," *State v. Barrow*, 350 N.C. 640, 647 (1999), or "that it is unable to provide the transcript to the jury" may indicate the failure to use discretion. *Starr*, 356 N.C. at 318. (emphasis omitted). Similarly, unambiguous language such as "we will not be able to," *Johnson*, 346 N.C. at 124, "the transcript is not available to the jury," *Lang*, 301 N.C. at 510–

---

[2] We recognize that in some cases, the jury request raised on appeal may be the only request within the record which pertains to the discretionary power afforded under N.C.G.S. § 15A-1233(a). Thus, in those circumstances, review of the single instance would constitute review of the entire record. Here, however, the record contains multiple jury requests which the trial court dealt with pursuant to N.C.G.S. § 15A-1233(a), and as such we must review these for context.

Our dissenting colleague, however, would have us review this case through the lens of four prior cases, each of which only dealt with a single, isolated request in the record. *See State v. Ford*, 297 N.C. 28, 30 (1979); *Starr*, 365 N.C. at 317; *Barrow*, 350 N.C. at 646–47; *State v. Hatfield*, 225 N.C. App. 765, 767 (2013). While helpful, these cases are different from the case *sub judice* in that they did not contain a record replete with other jury requests that could be used to give context to the request at issue. Further, it must also be pointed out that our dissenting colleague only found these cases to mirror the case at hand after entirely rewriting the words used by the trial court. Such an approach demonstrates the speculative leaps that must be taken to find that the case at hand "fit[s] comfortably" with our case law, as it does not.

11, or "there is no transcript available at this time," *State v. Hudson*, 331 N.C. 122, 144 (1992), has likewise been interpreted as a failure to exercise discretion when read in context with the entirety of the record.

On the other hand, a "trial court's instruction that the jurors rely upon their individual and collective memory of the testimony is indicative of further exercise of its discretion." *State v. Harden*, 344 N.C. 542, 563 (1996). Moreover, a trial court that receives multiple requests from the jury demonstrates that it has used discretion when it "allow[s] one and denie[s] the other." *State v. Lewis*, 321 N.C. 42, 51 (1987).[3]

All of this considered, it is presumed that a trial court acted correctly until "statements of the trial court show that the trial court did not exercise discretion." *Starr*, 365 N.C. at 318 (quoting *Johnson*, 346 N.C. at 126); *see also State v. Thomas*, 344 N.C. 639, 646 (1996); *State v. Sanders*, 280 N.C. 67, 72 (1971). Further, when

---

[3] The dissent cites *Johnson* for the proposition that "[i]f the trial court contrasts 'what it cannot do' against 'what it can do,' that juxtaposition of determinations suggests that it did not believe it had discretion to grant the request." 346 N.C. 119. However, the language used by the trial court in *Johnson* is starkly different than the language used by the trial court in the case at hand. In *Johnson*, the trial court said, "we will not be able to replay or review the testimony for you [but] I *can* review further instructions . . . ." *Id.* at 123 (emphasis added). The use of the words "I can" in this sentence connotes that the trial court weighed what it believed it *could* and could *not* do. Whereas here, the trial court stated "[w]e're not – we can't," followed by "we are going to provide . . . State's Exhibits 121, 122, 123." Because the trial court's decision to provide the State's Exhibits was not based on what it believed it was permitted to do, we see no such "juxtaposition" as our dissenting colleague believes there is. Instead, the language used by the trial court demonstrated a decision being made, not a distinction between what was and was not permitted. Therefore, given these key differences, we believe *Lewis* to be the more appropriate comparative case law. 321 N.C. at 51 ("[The trial court] told the jurors that they could examine the photographs or other exhibits [and] then gave a negative answer to review of the transcript. . . . It thus appears that the trial judge did exercise discretion. He considered both requests and . . . allowed one and denied the other.").

there are "ambiguous statement[s] capable of multiple interpretations, the 'presumption of regularity' is not overcome." *State v. Pickens*, 385 N.C. 351, 364 (2023). This presumption "dictates that appellate courts should presume that the trial judge did not commit error absent affirmative evidence to the contrary." *LePage v. People*, 320 P.3d 348, 354 (Colo. 2014); *see also State v. Neely*, 26 N.C. App. 707, 709 (1975) ("Absent some specific, affirmative showing by the defendant that error was committed, we will uphold the conviction because of the presumption of regularity in a trial."); *State v. Rasmussen*, 404 P.3d 719, 722 ( Mont. 2017) ("The defendant has the burden to overcome the presumption of regularity by producing affirmative evidence . . . ." (cleaned up)); *State v. Pappas*, 337 N.W.2d 490, 494 (Iowa 1983) ("[D]ecisions of the trial court are cloaked with a strong presumption in their favor and . . . to overcome this presumption of regularity requires an affirmative showing of abuse . . . ."(cleaned up)).

Here, the court's language of "[w]e're not – we can't provide a transcript" is, at best, ambiguous. While the word "can't," if read alone, could be indicative of a lack of discretion, the phrase "we're not" indicates the exercise of discretion. This inconsistent language creates ambiguity. Because "ambiguous statement[s] capable of multiple interpretations" do not overcome the presumption of regularity, *Pickens*, 385 N.C. at 364, defendant still bears the burden of providing affirmative evidence that the trial court misunderstood its discretion under N.C.G.S. § 15A-1233(a).

Both defendant and the Court of Appeals ignored the "[w]e're not" portion of

the transcript, focusing solely on the "we can't" language. This is not enough to overcome the presumption. While the Court of Appeals acknowledged that "[o]n several occasions during deliberations the jury asked to review evidence from the trial," the Court of Appeals failed to properly consider these other requests. *Vann*, 2022 WL 1313956, at *1.

A thorough inspection of the record demonstrates that the trial court was fully aware of and appropriately exercised its discretion. The jury request at issue was not the first jury request of the trial. Rather, the jury had previously submitted two requests to the court. Defendant does not argue that the trial court abused or was otherwise unaware of its discretion in these prior requests, but review of the trial court's responses to these requests is necessary to determine whether the trial court was aware of its discretion for the denial at issue. *See Lee*, 335 N.C. at 290.

First, the jury requested the transcript of defendant's interview with detectives Odham and Short, as well as the full phone extraction report. The court summoned the jury and informed them that they would be provided with both the transcript and the full extraction report, as well as other reports which the jury did not specifically request, but that the court believed would be helpful. The trial court's action here highlights the degree to which it understood and exercised its discretion. *See* N.C.G.S. § 15A-1233(a) ("In his discretion the judge may also have the jury review other evidence relating to the same factual issue so as not to give undue prominence to the evidence requested.").

Second, the jury requested Defendant's Exhibit No. 3, which the trial court discussed with the State and defendant, noting that it was defendant's exhibit with "handwritten notes on it." The court received consent from both parties, and ultimately provided the exhibit to the jury. Once again, the record shows that the trial court understood and exercised its discretion to allow the jury to examine this evidence. *See* N.C.G.S. § 15A-1233(a) ("The judge in his discretion . . . may permit the jury to reexamine . . . the requested materials admitted into evidence.").

Finally, and at issue before us, the jury requested transcripts of the trial testimony given by detective Odham, defendant, and the medical examiner. Upon receiving the request, the trial court conferred with the State and defendant, answering affirmatively when the State asked, "are you going to bring them in and tell them that, regarding their other requests, that it's their duty to recall the testimony?" The trial court then informed the jury that it was their "duty to recall the[ ] testimony," which is indicative of the use of discretion. *See Harden*, 344 N.C. at 563. Further, while denying the jury's request for the transcripts of trial testimony, the trial court still granted the request in part by permitting the jury to review the medical examiner's report, which is likewise indicative of an exercise of discretion. *See Lewis*, 321 N.C. at 51. Finally, when viewed in context with the prior requests in the record, the fact the trial court followed a similar pattern when considering all the jury requests is likewise indicative of discretion.

Thus, based upon a review of the entire record, "the trial court was aware of

its authority to exercise its discretion," *Lee*, 335 N.C. at 290, and defendant has failed to provide affirmative evidence to the contrary.[4] Because the record indicates that the trial court understood and properly exercised its discretion under N.C.G.S. § 15A-1233(a), there can be no finding of prejudicial error.[5] *See Johnson*, 346 N.C. at 126. Accordingly, the Court of Appeals' decision is reversed.

REVERSED.

---

[4] The dissent cites to *Hudson*, 331 N.C. at 144, to support its assertion that a court's grant of "the jury's request for some evidence does not cure the erroneous denial of the other." However, in *Hudson*, the trial court unambiguously stated, "the transcript is not available to the jury," while proceeding to grant other requests which it believed it was permitted to do. *Id.* It makes sense then in that situation that the trial court's grant of some evidence did not cure its error in denying other evidence. Here, however, the trial court's statement (unless completely rewritten in the way the dissent believes it should be) is ambiguous. Thus, review of the entire record is necessary and provides clarity for determining whether the trial court understood its discretion under N.C.G.S. § 15A-1233(a).

[5] It appears the Court of Appeals failed to analyze prejudice in accordance with the standard set forth in N.C.G.S. § 15A-1443(a) (2023), which requires the defendant to demonstrate that "there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial." However, since we find no error, we do not reach the issue of prejudice.

Justice RIGGS concurring in result only.

I agree with the majority that the Court of Appeals erred in granting Mr. Vann a new trial, but I differ on the rationale. Consistent with my dissenting colleague's well-reasoned analysis, I would hold that the trial court erred in its resolution of the jury's request to review testimony transcripts. Even so, because I believe that error was not prejudicial, I concur in the majority's decision to reverse the Court of Appeals.

To receive a new trial, Mr. Vann "bears the burden of showing that he has been prejudiced by the trial court's error in not exercising discretion in accordance with N.C.G.S. § 15A-1233(a)." *State v. Starr*, 365 N.C. 314, 319 (2011). The error is sufficiently prejudicial to require a new trial where there is "a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." *Id.* (quoting N.C.G.S. § 15A-1443(a)). While the materiality of the testimony and any contradictions arising therefrom are part of this holistic determination, so too is the presence of other evidence corroborating the defendant's guilt. *Id.* at 320.

I believe the other evidence presented to the jury in this case is sufficient to preclude a showing of prejudice in the trial court's error. That evidence includes:

- Mr. Vann admitted in his interrogation and on the stand that he was with the victim before her death.

- Her cellphone logs and the motel surveillance video placed his arrival

-18-

and departure at 9:30 a.m. and 9:49 a.m. that morning, respectively.

- Her body—cold to the touch—was found by housekeeping at 12:30 p.m., indicating a significant passage of time between her death and the discovery of her body.

- Her cellphone logs further indicate that she made no further contact with anyone else after Mr. Vann left her motel room, which was inconsistent with her general practice.

- In his testimony, Mr. Vann admitted to carrying a knife everywhere, though he maintained that he had lied during his interrogation about struggling over a knife with the victim because "[t]hey said something about she was stabbed. So now I'm trying to make the situation look like, as far as the stabbings, being accidental." But a review of his interrogation transcript shows that Mr. Vann described the presence of a knife well *before* investigators mentioned any stab wounds.

- And Mr. Vann acknowledged on both occasions that he and the victim could not agree on the price for her services. In sum, there was sufficient corroborating evidence of his guilt to conclude, looking holistically and focused on the facts of this case solely, that had the jury been provided the requested transcript, there was not a reasonable probability that the jury would have reached a different conclusion.

Turning to Mr. Vann's testimony itself, the thrust of his denials on the witness

stand appears to have been to suggest that the victim's admitted slaying was caused by a third person in the room; although that person's presence was entirely absent from his recounting of events on direct examination, he alternatingly testified on cross examination that he "was the only one involved" in what transpired in the victim's motel room, and that "I wasn't the only person . . . in that room. . . . Y'all didn't fully investigate." In fact, the bulk of his representations to that effect appeared in his interrogation transcript—a copy of which the jury *did* receive and review during deliberations. In short, Mr. Vann's testimony did not contradict the circumstantial evidence recounted above showing his guilt, particularly when his testimony did not present an alibi defense, plausibly demonstrate that someone else perpetrated the murder, and the jury was freely able to assess his credibility when it heard his testimony live. Under these circumstances, I do not believe there is a reasonable possibility that the jury would have reached a different result had it received a transcript of his testimony.

Justice EARLS dissenting.

In my view, the trial court failed to exercise its discretion on the jury's request for testimony transcripts. Because the court violated N.C.G.S. § 15A-1233(a) (2023), and that error prejudiced Mr. Vann, I would affirm the Court of Appeals and award a new trial.

## I.   Exercise of Discretion Under Section 15A-1233(a)

Section 15A-1233(a) allows a jury to request review of testimony or other evidence after retiring for deliberation. As this Court has explained, the statute levies a duty: when the jury asks to review evidence, the trial court *must* exercise its discretion to resolve that request. *State v. Lang*, 301 N.C. 508, 510 (1980); *see also State v. Ashe*, 314 N.C. 28, 34 (1985).

Under section 15A-1233(a), a court does not err in denying a jury request if "it is clear from the record that the court was aware of its authority to exercise its discretion and allow the jury to review" the sought evidence. *State v. Guevara*, 349 N.C. 243, 252 (1998) (cleaned up). On the other hand, a trial court errs if it "misunderstood its authority to allow review of a witness'[s] testimony," *id.*, or if it "erroneously informed the jury that there was no procedure which permitted them to review testimony," *State v. Weddington*, 329 N.C. 202, 208 (1991). Put simply, a trial court violates section 15A-1233(a) if it refuses to exercise its discretion in the mistaken belief that it has none to exercise. *State v. Starr*, 365 N.C. 314, 318 (2011). This Court has thus consistently found a statutory breach when a court believed that

it could not grant the jury's request. *See, e.g., id.*; *see also State v. Barrow*, 350 N.C. 640 (1999). Our cases have thus distilled a general rule: a trial court's "response indicating the inability to provide a transcript constitutes erroneous failure to exercise discretion." *Starr*, 365 N.C. at 318.

In gauging whether a trial court "misunderstood its authority," this Court examines the "precise words chosen by the trial court." *State v. Johnson*, 346 N.C. 119, 124 (1997). When the court disclaims its ability, "power, skill, resources, or qualifications" to grant a jury's request, it violates section 15A-1233(a). *See id.* at 125. This Court also considers context. If the trial court contrasts "what it cannot do" against "what it can do," that "juxtaposition of determinations" suggests that "it did not believe it had discretion to grant the request." *Id.*

This Court explored that "juxtaposition" in *Johnson*. In that case, like this one, jurors asked to revisit a witness's testimony. *Id.* The trial court first told jurors that it "*will not be able* to replay or review the testimony." *Id.* at 124. But right after disavowing its capacity to provide testimony, the court told the jury that it "*can review further instructions.*" *Id.* at 125. Based on those contrasting comments, this Court concluded that the trial court knew that its authority had limits—it simply misunderstood where to draw the line. *Id.* And coupled "with the subsequent admonishment that it is the jurors' duty to consider the evidence as they recall it," we explained, the trial court apparently believed "that it was not empowered to let the jurors review the testimony at issue." *Id.* (cleaned up).

The trial court made a similar error here. On the first day of deliberations—a Friday—the jury asked to see a transcript of Mr. Vann's police interrogation and Ms. McLean's phone records. The trial court assented and furnished each juror with a personal copy of those documents. The jury did not reach a verdict, so the trial court recessed for the weekend.

When jurors resumed deliberations the next Monday, they asked for transcripts of the testimony of Mr. Vann, Detective Odham, and the medical examiner. The jury also asked for Ms. McLean's autopsy report. The trial court provided the report but withheld the transcripts, explaining:

> The testimony of the detective, Mr. Vann, and the medical—medical examiner from the stand, it's your duty to recall their testimony. So you will have to remember that. *We're not—we can't provide a transcript as to that*.

(Emphasis added.)

Left with Mr. Vann's interrogation transcript, Ms. McLean's phone records, and the autopsy report, the jury continued deliberating. It soon convicted Mr. Vann on each charge against him.

The "precise words chosen by the court" betray its misunderstanding of—and failure to exercise—its discretion on the jury's request. *Johnson*, 346 N.C. at 124. The trial court first said, "we're not," before pausing and clarifying, "we *can't* provide a transcript as to that." (Emphasis added.) Among other things, "can't" or "cannot" means "to be unable to do otherwise than." *Can't/Cannot, Merriam-Webster's Collegiate Dictionary* (11th ed. 2007). Rephrased in those terms, the court effectively

told jurors, "We're not—we are unable to do otherwise than withhold a transcript as to that." *Cf. Starr*, 365 N.C. at 318 ("A trial court's statement that it is *unable* to provide the transcript to the jury demonstrates the court's apparent belief that it lacks the discretion to comply with the request." (citing *Barrow*, 350 N.C. at 646)).

Those remarks thus fit comfortably with our well-settled rule: A "court does not exercise its discretion when, as evidenced by its response, it believes it cannot" comply with the jury's request. *Starr*, 365 N.C. at 318. Unsurprisingly, then, the trial court's comments mirrors others found violative of section 15A-1233:

- "[W]e're not allowed to go back in . . . we really *can't* help you with that particular matter," *State v. Ford*, 297 N.C. 28, 30 (1979) (emphasis added);

- "We don't have that . . . [w]e *don't have the capability* of real-time transcripts so we *cannot* provide you with that," S*tarr*, 365 N.C. at 317 (emphasis altered);

- "The Court *doesn't have the ability* to now present to you the transcription of what was said during the course of the trial," *Barrow*, 350 N.C. at 647 (emphasis altered);

- "[W]e *can't* do that," *State v. Hatfield*, 225 N.C. App. 765, 767 (2013) (emphasis added).

The Court of Appeals drew those parallels. In granting Mr. Vann a new trial, the court canvassed our caselaw. *See State v. Vann*, No. COA20-907, slip op. at 4–6 (N.C. Ct. App. 2022) (unpublished). From that precedent, it gathered that "[l]anguage from the trial court that a transcript can't be provided, is not available, or is not

allowed to be reviewed" shows that the court "did not exercise the required discretion in considering whether to grant the jury's request." *Id.* at 6. It then applied that rule to the trial court's words, concluding that the court misapprehended its authority to furnish jurors with the testimony transcripts. *Id.*

The majority here, however, conjures up ambiguity in the trial court's statements. It concedes that "the word 'can't,' if read alone, could be indicative of a lack of discretion." But that reading somehow evaporates because the "phrase 'we're not' indicates the exercise of discretion." I think that argument reshuffles the trial court's remarks. True, the court first told jurors "we're not" providing the transcripts. But even if that phrase connotes discretion—a strained interpretation in its own right—the trial court did not stop there—it paused and corrected course, telling jurors that "we can't" furnish the transcripts. In my view, that remark is ambiguous in the same way that water is dry. And any murkiness in the phrase "we're not" was readily displaced by the categorical "we can't." Because the "precise words chosen by the court" disclaimed its ability to grant the jury's request, we could end our section 15A-1233(a) analysis with the court's plain language. *Johnson*, 346 N.C. at 124.

The majority offers two reasons why the trial court exercised its discretion. First, the majority maintains, the court understood and wielded its authority because it reminded jurors of their "duty to recall the[ ] testimony." Second, since the trial court exercised its discretion on other jury requests, the majority contends that it did the same for the testimony transcripts.

I find neither argument persuasive. For one, this Court has already rejected the idea that a trial court cures its failure to exercise discretion by simply telling jurors to recall the testimony. In *Starr*, for instance, we expressly held that if "the trial court's statement indicates its belief that it does not have discretion" to consider the jury's request, then "the court's additional instruction that the jurors rely on their memory will not render the response discretionary." *Starr*, 365 N.C. at 318–19. We have also applied that rule in practice. Take our decision in *Ford*. There, as here, the trial court reminded the jury "[i]t is your duty . . . to recall all of the evidence." *Ford*, 297 N.C. at 30. Yet this Court still held that the trial court failed to exercise its discretion when, in response to a request for evidence, it told jurors, "we really can't help you with that," a remark strikingly similar to this case. *Id.*; *see also State v. Hudson*, 331 N.C. 122, 144 (1992) (holding that trial court failed to exercise discretion even though it instructed jury to recall testimony). In fact, when a court disclaims its ability to grant the jury's request and then "admonish[es] that it is the jurors' duty to consider the evidence as they recall it," that "juxtaposition of determinations" suggests a failure to exercise discretion. *Johnson*, 346 N.C. at 125 (cleaned up). Here, then, the trial court's reminder that jurors recall the testimony does not remedy its statutory breach. Quite the opposite. Under our precedent, that instruction merely underscored the court's misapprehension of its authority. *See id.*

Next, the majority points out that the trial court allowed the jury's requests for other pieces of evidence, including Mr. Vann's interrogation transcript, Ms.

McLean's phone records, and the medical examiner's report. Because the court knew of and exercised its discretion for other jury requests, the majority reasons, it did the same for the testimony transcripts.

That syllogism, however, requires an unjustified logical leap. A court may understand its discretion over some types of evidence but misapprehend its authority over others, just as a driver who knows how to make a three-point turn may not understand how to parallel park. Recall that the trial court provided jurors with non-testimonial written evidence while categorically withholding transcripts of witness testimony. That conspicuously divergent treatment suggests that the trial court meant what it said—that it "couldn't" furnish jurors with the requested testimony transcripts.

This Court confronted a similar situation in *Hudson*, 331 N.C. 122. There, we held that a trial court failed to exercise its discretion when it granted part of the jury's request but erroneously refused to allow jurors to review a category of evidence that it thought it could not provide. *See id.* at 143–44. In that case, the jury asked to revisit the "written reports of expert witnesses who testified to defendant's mental capacity." *Id.* at 143. One expert witness—Dr. Rollins—"had not prepared a written report, so no such report was introduced into evidence or available to the jury." *Id.* As an alternative, the jury requested a transcript of Dr. Rollins' testimony. *Id.* There—as here—the trial court granted a portion of the jury's request; it allowed jurors "to review the available written reports" of the expert witnesses. *Id.* But there—as here—

the court "refused to permit the jury to examine a transcript of the Rollins testimony."

*Id.* In response to the jury, the court stated:

> Now, with respect to any request for a transcript of any portions of the testimony, I would say to you *that there is no transcript available at this time* of any of the testimony. I would further say to you, as I did during my earlier instructions to you, that you are to rely on your recollection of the evidence as it was presented during the course of the trial during your deliberations.

*Id.* at 144.

According to this Court, the trial judge erroneously denied the request for Dr. Rollin's testimony on the grounds that "the transcript was 'not available.' " *Id.* By labelling that evidence off limits—without exercising its judgment on the merits of the request—the trial court violated section 15A-1233. *See id.* That was so even though the court furnished some of the evidence sought by jurors.

The same reasoning applies to Mr. Vann's case. Here—as in *Hudson*—the trial court granted the jury's request for prepared written documents while denying the bid for witness transcripts. That was because here—as in *Hudson*—the trial court believed that it lacked the power to grant the jury's request for a particular species of evidence. And so here—as in *Hudson*—allowing the jury's request for some evidence does not cure the erroneous denial of other evidence.

Because the trial court believed that it could not provide the jury with transcripts of Mr. Vann's testimony, it failed to exercise its discretion. It thus violated section 15A-1233.

## II.  Prejudice

I would also hold that the trial court's error prejudiced Mr. Vann—but for the court's mistake, there is a "reasonable possibility" of a different result. *Starr*, 365 N.C. at 319 (quoting N.C.G.S. § 15A-1443(a)). In section 15A-1233 cases, this Court has found prejudice when the jury's full understanding of the requested testimony was "material to the determination of defendant's guilt or innocence." *Id.* (cleaned up); *see also Ashe*, 314 N.C. at 38; *Lang*, 301 N.C. at 511. The more "central" the testimony to the case, the more likely the trial court's error was prejudicial.[1] *See Johnson*, 346 N.C. at 126; *see also Ashe*, 314 N.C. at 37 ("The heart of this case . . . is the testimony concerning defendant's alibi, both that offered by defendant tending to support it and that offered by the state tending to rebut it."). In that vein, we have deemed an error prejudicial when the evidence withheld was the "only evidence directly linking defendant to the alleged crimes." *Johnson*, 346 N.C. at 126.

Mr. Vann has shown prejudice warranting a new trial. Because his testimony was the "heart of the case," *Ashe*, 314 N.C. at 37, erroneously withholding that evidence could have made all the difference. For one, Mr. Vann's account was "central" to the jury's verdict. *Johnson*, 346 N.C. at 126; *see also Ashe*, 314 N.C. at 37. Put simply, the State *needed* Mr. Vann's confession to convict him—as the Court of Appeals recognized, no other evidence "directly link[ed] him to the killing." *Vann*, slip

---

[1] It is assumed for the prejudice analysis that, if the trial court properly exercised its discretion, it would have provided jurors with the requested evidence. There is no reason here to assume otherwise.

op. at 7 (quoting *Johnson*, 346 N.C. at 126). True, other evidence "placed [Mr. Vann] in the victim's hotel room." *Id.* But it did not tie him to the felony robbery (the predicate for his felony murder charges), Ms. McLean's fatal injuries, or the death of her unborn child.

In other words, Mr. Vann's confession was the sole evidence for at least one essential element of each charge against him. Begin with the felony robbery. Because the State charged Mr. Vann with *felony* murder, it first had to prove that he committed a predicate felony—here, robbery with a dangerous weapon. Among other key elements, the State needed to show that Mr. Vann: (1) unlawfully took "personal property from [Ms. McLean] or in the presence of another" (2) by "use or threatened use" of a dangerous weapon. *State v. McLymore*, 380 N.C. 185, 199 n.3 (2022) (cleaned up).

Mr. Vann's confession was the only evidence on both scores. Only Mr. Vann linked himself to a "dangerous weapon"—i.e., Ms. McLean's knife. And only Mr. Vann implicated himself in the theft of Ms. McLean's phone, money, and knife. Though police later found the phone and lifted prints from it, none matched Mr. Vann. And the State never found the money or knife. In fact, there might have never been a knife at all—later in Mr. Vann's interrogation, he backtracked on his original account and stated that Ms. McLean did not have a knife, but another object that he was not able to identify.

The jury *had* to rely on Mr. Vann's confession to convict him of felony robbery—no other evidence showed that he used a dangerous weapon or took Ms. McLean's belongings. And since that robbery was the predicate for the felony murder of Ms. McLean and her unborn child, Mr. Vann's statements were foundational to those charges, too.

Likewise, Mr. Vann's confession was the only evidence tying him to the killing of Ms. McLean and her unborn child. During his interrogation, Mr. Vann admitted to officers that he repeatedly struck Ms. McLean, landing at least one punch to her "ribs." That was the fatal blow; according to Ms. McLean's autopsy, it ruptured her liver and caused internal bleeding. And when Ms. McLean died, her unborn child did, too. But nothing besides Mr. Vann's own words "link[ed] him to the actual killing." *Vann*, slip op. at 7. Though police discovered unidentified male DNA on Ms. McLean's underwear and her body, they did not find Mr. Vann's DNA anywhere in the motel room, on her clothes, or on her person. Likewise, there were no eyewitnesses to the alleged crimes. No forensic or circumstantial evidence proved that "his actions cause[d] or directly contribute[d] to the death of the victim[s]." *See State v. Collins*, 334 N.C. 54, 60–61 (1993). Mr. Vann's confession was thus the only evidence that he proximately caused the fatal injuries—an essential element for his murder convictions. *See id.* at 60 (citing *State v. Brock*, 305 N.C. 532 (1982)).

Without Mr. Vann's statements to officers, the charges against him fall apart. For similar reasons, Mr. Vann's trial testimony was the "heart of the case." *Ashe*, 314

N.C. at 37. When he took the stand, he recanted his confession and retracted the statements implicating him in the robbery and killings. He told jurors that he never argued with or assaulted Ms. McLean. He stated that when he left the motel, Ms. McLean was unharmed and alive. And he averred that he did not take any of her property, much less use a dangerous weapon to do so.

Mr. Vann's admissions to officers were the building blocks of the predicate felony and murder charges, and so his testimony gave jurors a stark choice: credit his interrogation statements or believe his recantation at trial. Only if jurors trusted his confession and discounted his testimony could they properly convict him of the robbery and murders. Because the content and credibility of Mr. Vann's trial testimony was "crucial"—indeed "central"—to the case against him, *Johnson*, 346 N.C. at 126, it was material to the "determination of [his] guilt or innocence," *Starr*, 365 N.C. at 319. Since his testimony recanted his earlier confession, jurors needed to review and examine that testimony when deciding his guilt. Had the trial court not erred and duly exercised its discretion to allow Mr. Vann's pivotal testimony, there is a "reasonable possibility" that the jury would have "reached a different result." *Id.* (quoting N.C.G.S. § 15A-1443(a)). Because I would find that the trial court failed to exercise its discretion and prejudiced Mr. Vann, I respectfully dissent.